**In the Matter of the Death of Charles Lee MARTIN.**

**FIRST FIDELITY INSURANCE CORPORATION and Millers Mutual Fire Insurance Company of Texas, Petitioners,**

**v.**

**Virginia Jane MARTIN and the State Industrial Court, Respondents.**

No. 42758.

Supreme Court of Oklahoma.
April 8, 1969.

 

 

 

 

 

 

 

 

 

 

 

 

Cheek, Cheek & Cheek, Oklahoma City, for petitioners, Ray Teague, Oklahoma City, of counsel.

Shutler, Shutler, Baker & Simpson, Kingfisher, G. T. Blankenship, Atty. Gen., State of Oklahoma, for respondents.

LAVENDER, Justice.

Petitioners appeal from an order of the State Industrial Court, sitting en banc, amending and approving an award entered by the trial judge allowing the respondent, Virginia Lee Martin, claimant below, death benefits under the provisions of the Oklahoma Workmen's Compensation Act, for the death of her husband, Charles Lee Martin. Parties will be referred to as they appeared in the trial court. The deceased Charles Lee Martin will be referred to as "deceased."

Respondent, First Fidelity Insurance Company, is engaged in the insurance business and employed as a claims adjuster the deceased, Martin. It is conceded that the respondent, Millers Mutual Fire Insurance Company, carried a Workmen's Compensation Insurance Policy covering the employment of the deceased. The jurisdiction of the State Industrial Court is admitted.

It is admitted that the deceased was killed at approximately 7:10 P.M. on January 9, 1967, in a collision between an automobile driven by him and furnished by the respondent for use in his work as an insurance adjuster and a car driven by a second party. It is also admitted that the deceased left surviving him, as dependents under the Oklahoma Workmen's Compensation Act, his widow, Virginia Jane Martin, and his minor son of a previous marriage, Samuel Angelo Martin.

In seeking a vacation of the award, respondent contends,

(1) The accident and death of the deceased, Martin, did not arise out of or during the course of his employment as an insurance adjuster for respondent.

(2) The accident and death of deceased was caused directly by the voluntary intoxication of the deceased.

Epitomized the facts are as follows:

Deceased reported for work at the office of the respondent located at 4400 North Lincoln Boulevard, Oklahoma City, at 8 o'clock A.M. on January 9, 1967, and went over the work to be done during the day with the claims manager. He worked on various claim files during the day. At approximately 4:45 P.M., deceased left the office to go to Midwest City and meet some parties at the M. and M. Service Station for the purpose of settling a claim. He arrived at the station about 5:00 P.M. and the settlement of the claim was completed about 5:30 P.M.

The deceased and M., one of the owners of the station, and another insurance adjuster, who happened to be in the service station, each drank about two or three drinks of bourbon whiskey from a bottle furnished by M. About sixty per cent of the pint bottle was consumed by the three men. About 6:30 P.M. the owner of the station left to go to a meeting of a civic club. He told the deceased to take the partially filled bottle with him if he desired to do so. The bottle with contents was found in the inside coat pocket of the deceased after the accident.

The accident occurred at the intersection of Interstate Highway 40 and the Reno Entrance Road at approximately 7:10 P.M. The investigating highway patrolman, reconstructing the accident, testified that deceased was traveling west in the left lane of Highway 40 and apparently passed out or went to sleep. He swerved across the center median to the wrong side of the highway and struck the automobile of another party parked at the Reno Street en-

trance to Highway 40. His car then went out of control and finally turned over.

The deceased was thrown from his car. The highway patrolman found him about twenty feet from his car. His face was buried in the mud. The highway patrolman testified he smelled the odor of whiskey on the deceased and found the partially filled whiskey bottle in his inside coat pocket. The highway patrolman noted on his report that in the officer's opinion the deceased was driving while under the influence of intoxicating liquor.

About an hour before the accident this same highway patrolman was in the service station where the settlement was made. He was introduced to the deceased and shook hands with him. He said the deceased did not rise from his chair but he does not know if he was intoxicated or not.

Respondent's claim manager testified deceased did not have any specific hours of employment and many times an adjuster has to contact policyholders, also people making claims against policyholders, and witnesses after five in the evening when the parties are off work. The last time he saw the deceased was when the deceased left the company office at 4:45 P.M. He knew that the deceased was going to Midwest City to settle a claim. The deceased had other claim files with him. He examined the contents of the brief case of the deceased the morning after the accident. The claim filed deceased took to Midwest City with him contained a notation indicating it had been settled. He could not determine with certainty whether or not the deceased, while on the trip to Midwest City, had worked on the other files in his brief case. As far as he could determine deceased concluded his work that day upon the completion of the settlement of the claim he went to Midwest City to settle. He does not know where the deceased was going at the time of the accident. He could have been going to his office, his home or various and sundry places. It would have been possible that the deceased was enroute to adjust another claim. Adjusters are subject to call in emergencies twenty-four hours a day. The route the deceased was traveling at the time of the accident was the correct route for him to travel in returning to Oklahoma City, also to his office and his home.

The automobile deceased was driving at the time of the accident was furnished by the respondent for the use of deceased in his work.

Respondent had an oral rule that adjusters were to refrain from drinking intoxicants while they were working and dealing with the public. There was no objection to adjusters drinking when off duty as long as it did not interfere with their work on the following day.

M., the owner of the service station, testified that after the settlement of the claim had been completed he invited the deceased and another insurance adjuster, T., into his private office. He procured a pint bottle of bourbon whiskey. Each of the three men had two or three drinks mixed with Coca Cola. Adjuster T. left about 5:30 or 5:45. He (M.) left to go to a civic club meeting about 6:30 or 6:45. Deceased remained in the office of the witness. Witness told the deceased that he could take the partially filled whiskey bottle with him. The bottle was gone the next day. Deceased did not appear to be drunk.

Adjuster T. testified concerning the drinking in the service station office. He said he had two drinks and deceased had two. Deceased did not appear to be intoxicated when witness left the office.

The burden of proof was upon the claimant to establish by competent evidence that the deceased was on some mission for his employer or doing something for his employer in the course of his employment at the time the accident occurred. Lane-Wells Co. v. Brewer (1967), Okl., 433 P.2d 959; Platner v. Bill Moore Chevrolet (1965), Okl., 400 P.2d 148; Anderson v. Bills Bakeries, Inc. (1964), Okl., 393 P.2d 524; Dobson v. Commercial Oil Transport, Inc. (1962), Okl., 371 P.2d 709. Such question of fact may be established by cir-

cumstantial evidence which need not rise to the degree of certainty which would exclude every other conclusion than that reached by the trial tribunal. Oklahoma Ordinance Works Authority v. Garrison (1967), Okl., 424 P.2d 983; Riley v. Cimarron-Empire Construction Company (1966), Okl., 420 P.2d 550; Kier v. Burton (1963) Okl., 385 P.2d 489; Rigdon & Bruen Oil Co. v. Beerman (1959), Okl., 346 P.2d 169; Tulsa Frozen Foods Co. v. Pendergraft (1957), Okl., 317 P.2d 1115; Marby Construction Co. v. Mitchell (1955), Okl., 288 P.2d 1108.

 Where there is reasonable doubt as to whether an accident did in fact arise out of the employment such doubt shall be resolved in favor of the claimant. Nebo Oil Company v. Wright (1965), Okl., 406 P.2d 266; Graham-Michaelis Drilling Co. v. Atkins (1964), Okl., 397 P.2d 658; Mullins v. Tanksleary (1962), Okl., 376 P.2d 590.

The deceased at the time of the accident had in his possession a number of office files pertaining to the business of his employer. The files had been assigned to him for handling. His supervising officer testified that deceased may possibly have been on his way to take care of work connected with these files at the time the accident occurred. Insurance adjusters work irregular hours and there would be nothing unusual about an adjuster working at 7 o'clock in the evening.

The finding of the State Industrial Court that the deceased at the time of the accident was working in the course of his employment with respondent is sustained by reasonable competent evidence and will not be disturbed by this court on review. Riley v. Cimarron-Empire Construction Company, supra; Nebo Oil Company v. Wright, supra; Griffin v. Flint Steel Corporation (1965), Okl., 405 P.2d 63.

The evidence relating to intoxication is conflicting, but a careful review of the record convinces us that the finding of the State Industrial Court that the accident resulting in the death of the deceased was not caused solely or directly by the in-

toxication of the deceased is supported by adequate, credible evidence. It is therefore our duty to affirm such finding. Brooks & Dahlgren, Inc. v. Dollar (1932), 156 Okl. 155, 9 P.2d 926.

The order and award of the trial judge as amended and affirmed by the State Industrial Court is sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and HODGES, JJ., concur.